IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

GLENN ELLIOTT LEONARD,

        Petitioner,

    v.

STATE OF OREGON and FRANKIE,

        Respondents.

Case No. 2:13-cv-01865-ST

FINDINGS AND RECOMMENDATIONS

    Craig E. Weinerman
    Assistant Federal Public Defender
    101 S.W. Main Street, Suite 1700
    Portland, Oregon 97204

        Attorney for Petitioner

    Ellen F. Rosenblum, Attorney General
    Samuel A. Kubernick, Assistant Attorney General
    Department of Justice
    1162 Court Street NE
    Salem, Oregon 97310

        Attorneys for Respondent

STEWART, Magistrate Judge:

    Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his state-court convictions for the sexual abuse of his former girlfriend's children. For the reasons that follow, the Amended Petition for Writ of Habeas Corpus (docket #24) should be denied.

1 – FINDINGS AND RECOMMENDATIONS

## BACKGROUND

On March 15, 2007, the Linn County Grand Jury indicted petitioner on four counts of Sexual Abuse in the First Degree, three counts of Sodomy in the First Degree, two counts of Sodomy in the Second Degree, one count of Rape in the First Degree, and one count of Sexual Abuse in the First Degree.[1]  Respondent's Exhibit 102.  The charges pertained to the abuse of three minor children, JR, EC, and JTR, all of whom were the children of petitioner's former girlfriend.  The abuse was alleged to have occurred between January 2000 and January 2006.

Dr. Carol Chervenak, a physician employed as the Director of a child abuse assessment center in Linn County known as the "ABC House," interviewed and examined all three children.  During petitioner's trial, Dr. Chervenak testified that JR had a "longstanding bout of painful urination between the ages of five and nine years old," something known as "dysuria."  Trial Transcript, p. 188.  She opined that "sexual abuse and genital manipulation is one of the causes of dysuria" and noted that the dysuria resolved after petitioner was no longer living in the home.  *Id* at 189.  She also testified that JR told her that petitioner touched her "privates and [her] backside," and that the abuse occurred "[p]retty much every night." *Id* at 195-96.  Dr. Chervenak concluded "to a reasonable medical certainty" that JR had been sexually abused, and was concerned that she had been physically abused as well.  *Id* at 197.

---

[1] The Grand Jury also charged petitioner with one count of Failure to Report as a Sex Offender, a crime which is not at issue in this case.  Respondent's Exhibit 102.  Petitioner ultimately pleaded no-contest to that charge.

Dr. Chervenak then testified as to JTR:

> Q. And after your complete examination of [JTR], were you able to a reasonable medical certainty render a diagnosis of [him]?
>
> A. Yes.
>
> Q. And what is that diagnosis, Dr. Chervenak?
>
> A. That there had been sexual abuse.
>
> Q. And what is that based upon?
>
> A. His statements.

*Id* at 200.

Dr. Chervenak also testified that EC had been sexually abused:

> Q. [W]ere you able to a reasonable medical certainty, make a diagnosis of EC?
>
> A. Yes.
>
> Q. And what is that diagnosis, Dr. Chervenak?
>
> A. That there had been sexual abuse and also physical abuse.
>
> Q. And again, that was based upon the statements that he had made to you?
>
> A. Yes.

*Id* at 204.

Petitioner's counsel did not object to Dr. Chervenak's testimony.

Testifying in his own defense, petitioner denied abusing the children. The jury ultimately convicted him of three counts of Sodomy in the First Degree, two counts of Sodomy in the Second

Degree, one count of Rape in the First Degree, and one count of Sexual Abuse in the First Degree. *Id* at 449-50. These counts all corresponded to JR and EC. The trial court dismissed the charges of Sexual Abuse in the First Degree pertaining to JTR on which the jury was unable to reach a decision.[2] *Id* at 448-49. The trial court then sentenced petitioner to 400 months in prison. Sentencing Transcript, p. 19.

Petitioner filed a direct appeal in which his court-appointed attorney argued that: (1) non-unanimous jury verdicts are unlawful; and (2) only a jury, not the trial judge, may impose a consecutive sentence. Respondent's Exhibit 104. Petitioner filed a separate *Pro Se* Supplemental Brief arguing that the trial court violated the U.S. Constitution by "allowing the state[']s witness to testify as to the truthfulness of another witness in giving an opinion on whether the actual abuse occurred." Respondent's Exhibit 105. The Oregon Court of Appeals affirmed the trial court's decision without issuing a written opinion. *State v. Leonard*, 230 Or. App. 431, 215 P.3d 127 (2009).

Petitioner sought review in the Oregon Supreme Court. His attorney argued the unanimity issue, and petitioner argued in a separate *Pro Se* Petition for Review that a "diagnosis of sexual

---

[2] The trial court had already dismissed the Sodomy in the First Degree charge as to JTR pursuant to a judgment of acquittal. Trial Transcript, p. 275. It dismissed the charge of Unlawful Sexual Penetration as to JR on its own motion because the indictment failed to allege that she was under the age of 12. *Id* at 375.

abuse based solely on a child's history, (*i.e.,* based on the child's statement without affirmatively supporting physical findings), constitutes an impermissible comment on the child's credibility." Respondent's Exhibit 128. On October 1, 2009. while this appeal was pending, the Oregon Supreme Court issued its decision in *State v. Southard*, 347 Or. 127, 142, 218 P.3d 104, 113 (2009), ruling that a medical diagnosis of sexual abuse in the absence of corresponding physical evidence of sexual abuse "does not tell the jury anything that it could not have determined on its own" and that such a diagnosis is inadmissible under OEC 403 because its risk of prejudice outweighs the probative value of the diagnosis.[3]

The *Southard* decision prompted petitioner's attorney to file a Memorandum of Additional Authorities with the Oregon Supreme Court on October 12, 2009, citing *Southard* in the context of the claim raised within petitioner's *Pro Se* Petition for Review. Respondent's Exhibit 130. On December 9, 2009, the Oregon Supreme Court denied review. *Id,* 347 Or. 365, 222 P.3d 1091.

Petitioner next filed for post-conviction relief in Marion County. Among his claims, he alleged that his trial attorney had been ineffective by failing to object to Dr. Chervenak's expert diagnosis of sexual abuse because it amounted to improper

---

[3] The following year, in *State v. Lupoli*, 348 Or. 346, , 362-63, 234 P.3d 117 (2010), the Oregon Supreme Court explicitly stated that an expert's diagnosis of child sexual abuse in the absence of supporting physical evidence constituted impermissible vouching because the testimony was "necessarily based on her assessment of the child's believability."

vouching.    Respondent's Exhibit 111, pp. 6-7.    The PCR trial court denied relief and specifically concluded that because the testimony at issue was admissible at the time, it was reasonable for trial counsel not to object.    Respondent's Exhibit 120, p. 2. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review.    *Leonard v. Premo*, 255 Or. App. 294, 297 P.3d 555, *rev. denied*, 353 Or. 787, 304 P.3d 466 (2013).

Petitioner filed this 28 U.S.C. § 2254 habeas corpus case on October 18, 2013.    On July 3, 2014, petitioner's court-appointed counsel filed an Amended Petition for Writ of Habeas Corpus containing the following grounds for relief:

<u>First Claim For Relief</u>

Petitioner was denied due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution.    The trial court violated due process when it allowed the State's medical expert to testify to her diagnosis of sexual abuse in the absence of any confirming physical evidence.

<u>Second Claim For Relief</u>

Petitioner was denied his right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution when his trial counsel:

A.    Failed to object to the testimony of the State's medical expert as to her diagnosis that complaining witnesses were sexually abused because the testimony improperly vouched for the credibility of the complaining witnesses and was inadmissible absent physical evidence supporting the diagnosis. *See State v. Lupoli*, 348 Or. 346,

362-62 (2010) (opinion of social worker that child suffered from sexual abuse constituted impermissible vouching); *State v. Southard*, 347 Or. 127, 141-42, 218 P.3d 104 (2009) (error to admit expert medical opinion diagnosing that child suffered from sexual abuse absent physical evidence of abuse); *State v. Middleton*, 294 Or. 427, 438 (1983) (witness, lay or expert, may not give opinion on whether another witness is telling the truth);

B. Failed to object, on hearsay and confrontation clause grounds, to the testimony of the State's medical expert as to her diagnosis that a complaining witness was sexually abused when it was based on the hearsay statements of the complaining witness's mother and a urologist who did not testify at trial;

C. Failed to obtain and submit medical records that would have contradicted the state's medical expert's diagnosis that a complaining witness was sexually abused when the records would have shown that the complaining witness sought treatment for a medical condition called dysuria before her first contact
with petitioner.

<u>Third Claim For Relief</u>

Petitioner was denied the effective assistance of appellate counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution when appellate counsel failed to raise on appeal the following errors:

A. The trial court's admission of a diagnosis of sexual abuse by the State's medical expert in the absence of any confirming physical evidence;

B. The trial court's admission of a diagnosis of sexual abuse by the State's medical expert that was based on the out-of-court statements of a complaining witness's mother and a urologist who did not testify at trial; and

C. The trial court's admission of expert testimony that vouched for the credibility of complaining witnesses.

Fourth Claim For Relief

Petitioner was denied his right to due process
under the Fifth and Fourteenth Amendments because
the State failed to disclose materially
exculpatory and impeachment evidence; *to-wit*, the
medical records of one of the complaining
witnesses that would have established that the
complaining witness had a pre-existing medical
condition that would have contradicted the medical
expert's diagnosis of sexual abuse. *See Brady v.
Maryland*, 373 U.S. 83 (1963).

Fifth Claim For Relief

Petitioner is actually innocent of the crimes for
which he stands convicted. *Herrera v. Collins*, 506
U.S. 390 (1993).

Amended Petition (docket #24), pp. 3-6.

Respondent asks the court to deny relief on the Amended
Petition because: (1) petitioner failed to fairly present Subpart
C of the Second Claim and the Third and Fourth Claims to the
state courts; (2) to the extent the First Claim raises a federal
claim that was fairly presented, the state courts' resolution of
that claim was not objectively unreasonable; (3) the state-court
decisions denying relief on Subparts A and B of the Second Claim
were not objectively unreasonable; and (4) petitioner has not met
his burden of proof on his freestanding claim of actual innocence
alleged as the Fifth Claim.

**FINDINGS**

I.    **Unargued Claims**

Although petitioner raises five claims, including a number
of sub-claims, he elects to argue only the following two claims
alleging that: (1) trial counsel was ineffective by failing to
object to Dr. Chervenak's testimony as to sexual abuse in the

absence of any confirming physical evidence (Subpart A of the Second Claim); and (2) direct appellate counsel was ineffective by not assigning error to the admission of Dr. Chervenak's testimony (Subpart A of the Third Claim). Petitioner neither argues the merits of his remaining claims nor addresses any of respondent's arguments as to why relief on these claims should be denied. As such, petitioner has not carried his burden of proof with respect to these unargued claims. *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (petitioner bears the burden of proving his claims). Even if he had, the court's own review of the existing record reveals that the unargued claims would not entitle petitioner to relief.

## II.  **Subpart A of Third Claim**

### A.  **Exhaustion and Procedural Default**

A petitioner seeking habeas relief must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of habeas corpus claims pursuant to 28 U.S.C. § 2254. *Rose v. Lundy*, 455 U.S. 509, 519 (1982). The exhaustion doctrine is designed "to avoid the unnecessary friction between the federal and state court systems that would result if a lower federal court upset a state court conviction without first giving the state court system an opportunity to correct its own constitutional errors." *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973).

Respondent asserts that petitioner failed to fairly present the ineffective assistance of direct appellate counsel claim

alleged as Subpart A of the Third Claim to Oregon's state courts, leaving it procedurally defaulted and ineligible for merits review. Petitioner does not contend otherwise, and instead argues that the court should excuse his default because his PCR counsel failed to raise the claim.

Traditionally, the performance of PCR counsel could not be used to establish cause and prejudice to excuse a procedural default. *Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991) (only the constitutionally ineffective assistance of counsel constitutes cause); *Pennsylvania v. Finley*, 481 U.S. 551, 556 (1987) (there is no constitutional right to counsel in a PCR proceeding). However, in *Martinez v. Ryan*, 566 U.S. --, 132 S. Ct. 1309 (2012), the Supreme Court found "it . . . necessary to modify the unqualified statement in *Coleman* that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." *Id* at 1315. It concluded that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.*

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance of trial counsel if, in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id* at 1320.

10 – FINDINGS AND RECOMMENDATIONS

In order to show that the omitted claim is substantial, a petitioner must "demonstrate that the underlying ineffective assistance of trial counsel claim . . . has some merit." *Id* at 1318-19.   A claim is considered "insubstantial" if "it does not have any merit or . . . is wholly without factual support." *Id* at 1319.   In order to make the second required showing that appointed PCR counsel was "ineffective," a petitioner:

> need only show that his PCR counsel performed in a deficient manner.   A prisoner need not show actual prejudice resulting from his PCR counsel's deficient performance, over and above his required showing that the trial-counsel IAC claim be "substantial" under the first *Martinez* requirement.

*Detrich v. Ryan*, 740 F.3d 1237, 1245-46 (9th Cir. 2013).

In 2013, the Ninth Circuit concluded that *Martinez* applies not only to claims of ineffective assistance of trial counsel, but also to claims of ineffective assistance of appellate counsel.   *Nguyen v. Curry*, 736 F.3d 1287, 1293 (9th Cir. 2013). Petitioner relies on this extension of *Martinez* to excuse his default as to Subpart A of the Third Claim for ineffective assistance of direct appellate counsel.

**B.   Analysis**

According to petitioner, the issue of an expert medical diagnosis of sexual abuse in the absence of accompanying physical evidence was percolating for decades in Oregon's state courts. He asserts that the Oregon Supreme Court's decision in *Southard* was not a novel interpretation of existing law.   Therefore, when the Oregon Supreme Court granted the petition for review in

*Southard* four months before petitioner filed his Appellant's Brief, it was incumbent upon appellate counsel to raise this issue. He attributes his procedural default of this issue to PCR counsel's failure to raise it to the Marion County Circuit Court. Thus, for this claim to fall under *Martinez*, the underlying claim of ineffective assistance of appellate counsel must be substantial.

To prevail upon an ineffective assistance of counsel claim, a petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689. An appellate attorney "who files a merits brief need not (and should not) raise every non-frivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Accordingly, a petitioner wishing to bring a *Strickland* claim based on his appellate attorney's failure to raise a particular claim must not only show that the claim had merit, but must also demonstrate that the omitted claim was "clearly stronger than issues that counsel did present." *Id.*

A petitioner must also show that his counsel's performance prejudiced his defense. The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.    A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id* at 696.    In proving prejudice with respect to the performance of appellate counsel, a petitioner must demonstrate a reasonable probability that but for appellate counsel's failure, "he would have prevailed on his appeal." *Smith*, 528 U.S. at 285-86.

Petitioner relies on *Wells v. Howton*, No. 07-1117-TC, 2011 WL 5999356 (D. Or. Aug. 22, 2011, *adopted*, 2011 WL 599359 (D. Or. Nov. 29, 2011) to support his contentions.    In *Wells*, Magistrate Judge Coffin concluded that even though Mr. Wells's appeal occurred prior to the Oregon Supreme Court's decision in *Southard*, appellate counsel was still constitutionally obliged to raise the issue:

> The Oregon Supreme Court decisions in *Southard* and *Lupoli* did not cover new ground, nor did the decisions overturn prior Oregon precedent. Instead, as the Oregon Supreme Court stated in *Southard*, the analysis simply continued a debate that had been ongoing for decades. . . .   The series of cases and body of case law included a determination from 1983 that no witness, expert or otherwise, may give an opinion on whether [the witness] believes a witness is telling the truth.

*Wells*, 2011 WL 5999356, at *3 (internal quotation removed).

*Wells* is distinguishable from petitioner's case in three important ways.    First, the appellate attorney in *Wells* completely abandoned his client, something Magistrate Judge Coffin found "amounted to a constructive denial of appellate counsel. . . ."  *Id* at *2.  In contrast, this case involves no abandonment or constructive denial of counsel.

Second, in this case, petitioner filed *pro se* briefs in both the Oregon Court of Appeals and the Oregon Supreme Court specifically placing Dr. Chervenak's testimony at issue, and faulting the trial court for allowing that testimony because it contained improper comments on the credibility of other witnesses. Respondent's Exhibits 105 & 128. Petitioner claims this is not significant because he failed to specifically rely upon OEC 403 as the basis for his claim. However, petitioner's *pro se* submissions clearly articulated his concern that Dr. Chervenak's testimony amounted to improper vouching. Thus, unlike *Wells*, both the Oregon Court of Appeals and the Oregon Supreme Court had an opportunity to act on the issue of impermissible vouching, and the Oregon Supreme Court had the added benefit of counsel's Memorandum of Additional Authorities specifically explaining why Dr. Chervenak's testimony was inadmissible in light of *Southard*.

Finally, in *Wells*, the direct appellate counsel filed an appellant's brief that "contained one frivolous argument" in the form of a "formulaic challenge to the constitutionality of Oregon's Measure 11. By the time this brief was filed in December of 2002, the claim had been rejected by all state and federal courts having addressed the issue, including the Ninth Circuit Court of Appeals." *Wells*, 2011 WL 5999359, at *2. Here, in contrast, direct appellate counsel raised two strong claims. He challenged Oregon's non-unanimous jury rule, a unique rule

employed by only two states in the nation.[4]    The United States
Supreme Court's decision in *Apodaca v. Oregon*, 406 U.S. 404
(1972), established the constitutionality of such a system, but
in an odd way.  Although eight of the nine Justices believed that
the issue of unanimity should correspond between state and
federal criminal proceedings, the unusual 4-1-4 split resulted in
an outcome where the Constitution requires federal, but not
state, convictions to be unanimous.  Unlike the Measure 11 issue
in *Wells,* this was not a frivolous issue to raise.

     Petitioner's direct appellate attorney also raised a claim
challenging the trial judge's authority to impose consecutive
sentences.  At that time, the Oregon Supreme Court had already
determined that a judge may not impose consecutive sentences
without appropriate findings from a jury because the imposition
of such sentences increased "the quantum of punishment" imposed.
*State v. Ice*, 343 Or. 248, 170 P.3d 1049 (2007), *rev'd* 555 U.S.
160, *modified on remand*, 346 Or. 95, 204 P.3d 1290 (2009).
Although the United States Supreme Court later reversed that
decision in a 5-4 ruling, at the time appellate counsel filed her
brief, this was a winning argument in Oregon.  In this regard,
appellate counsel did not simply raise a frivolous, formulaic
issue as in *Wells*, but instead raised two claims worthy of
appeal.

     Not only did appellate counsel raise claims worthy of
appeal, she did so during a time when the Oregon Court of Appeals

---

[4] Louisiana is the only other jurisdiction that allows a non-unanimous finding
of guilty in criminal cases.  LSA—C.Cr.P. Art 782.

had repeatedly rejected the argument that ultimately prevailed in
*Southard*.  *State v. Sanchez-Cruz,* 177 Or. App. 332, 33 P.3d 1037
(2001), *rev. denied,* 333 Or. 463, 42 P.3d 1245 (2002); *State v.
Trager*, 158 Or. App. 399, 974 P.2d 750, *rev. denied*, 329 Or. 358,
994 P.2d 125 (1999); *State v. Wilson,* 121 Or. App. 460, 855 P.2d
657, *rev. denied*, 318 Or. 61, 865 P.2d 1267 (1993).  Because this
claim had been repeatedly rejected by the Oregon Court of Appeals
and because petitioner had not preserved such an objection at
trial,[5] appellate counsel's performance did not fall below an
objective standard of reasonableness when she declined to pursue
this issue. *Southard* changed the law in Oregon.[6] As explained by
the Oregon Court of Appeals, before *Southard* was decided, a
medical expert's diagnosis of sexual abuse in the absence of
supporting physical evidence constituted permissible testimony in
Oregon.  *Umberger v. Czerniak*, 232 Or. App. 563, 564, 222 P.3d
751 (2009), *rev. denied*, 348 Or. 13 (2010).  Therefore, appellate
counsel did not act unreasonably by relying on the law as it
existed prior to *Southard*.

---

[5] Although petitioner asserts that the Oregon Court of Appeals has, on at
least three occasions, reviewed unpreserved *Southard* issues and granted relief
on those issues, those cases were all decided *after Southard*.  Thus, he cannot
apply this rationale to his own appeal that was decided pre-*Southard.*

[6] While this analysis differs somewhat from that of *Wells*, it is in accord
with three other later cases decided in this District. *Hatchett v. Hill,* No.
06-cv-1023-TC, 2011 WL 7443755, at *8-9 (D. Or., Dec. 21, 2011), *adopted*, 2012
WL 673767 (D. Or., Feb. 2012); *McLain v. Blacketter*, No. 3:08-cv-01440-KI,
2012 WL 3116186, at *7 n1 (D. Or., July 27, 2012)("*Wells* involved a unique set
of facts and a complicated procedural posture in which petitioner was seeking
a new direct appeal."); and *Balogh v. Kilmer*, No. 3:10-cv-1283-AC, 2012 WL
7830039, at *6 (D. Or., Nov. 29, 2012), *adopted*, 2013 WL 1352400 (D. Or., Apr.
3, 2013).

16 – FINDINGS AND RECOMMENDATIONS

It is true that four months before appellate counsel filed the Appellant's Brief, the Oregon Supreme Court granted review in *Southard*. However, as noted above, petitioner placed the issue before the Oregon Court of Appeals *pro se,* and his appellate counsel supplemented the *pro se* briefing within days after the Oregon Supreme Court issued its decision in *Southard*. Petitioner also notes that Mr. Southard's appellate attorney and petitioner's appellate attorney practiced in the same office. However, unlike petitioner's case, the vouching issue was preserved at trial in *Southard*. Given the unpreserved status of petitioner's claim, it was not a poor strategic decision for appellate counsel not to focus on this issue. For all of these reasons, PCR trial counsel did not fail to raise a substantial claim of ineffective assistance of appellate counsel.

Even if the court were to conclude that the ineffective assistance of appellate counsel claim had some measure of merit, it was a reasonable strategy for PCR counsel to instead raise the ineffective assistance of trial counsel claim (alleged here as Subpart A of the Second Claim). Specifically, both claims for ineffective assistance of trial counsel and direct appellate counsel were predicated upon an attorney's failure to anticipate a future holding of the Oregon Supreme Court. However, the claim predicated upon the appellate attorney's performance necessarily involved her decision not to pursue an unpreserved issue. The preservation issue was not applicable to trial counsel. In making this strategic choice, PCR counsel's performance did not fall below an objective standard of reasonableness.

17 – FINDINGS AND RECOMMENDATIONS

Because Subpart A of the Third Claim is not a substantial one, and because PCR counsel made a reasonable strategic decision to pursue an ineffective assistance of trial counsel claim instead of an unpreserved claim predicated upon the same legal theory, petitioner is unable to excuse his procedural default as to Subpart A of the Third Claim under *Martinez*.

## III. Subpart A of Second Claim

### A.    Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas

court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413.   The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous.   *Id* at 410.   The state court's application of clearly established law must be objectively unreasonable.   *Id* at 409.

   **B.   Analysis**

   Petitioner asserts that his trial counsel's performance fell below an objective standard of reasonableness by failing to object to Dr. Chervenak's testimony which amounts to impermissible vouching for the credibility of the victims.   As previously noted, the PCR trial court determined that because the trial occurred prior to the *Southard* decision, which was not foreseeable, it was reasonable for trial counsel not to object. Respondent's Exhibit 120, p. 1.   Given that the Oregon Court of Appeals had repeatedly rejected such claims at the time of petitioner's trial, the PCR trial court's decision is neither contrary to, nor an unreasonable application of, clearly established federal law.

**IV.   Request for Evidentiary Hearing**

   Petitioner asserts that if the court does not grant habeas corpus relief on the record currently before it, it should conduct an evidentiary hearing where petitioner would introduce additional, but unspecified, evidence in support of his *Martinez* argument.   The court should deny this request because the record

is clear regarding this issue and because an evidentiary hearing is neither necessary nor in the interests of judicial economy. *See Schriro v. Landrigan*, 127 S.Ct. 1933, 1940 (2007) (where the record in the case precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## RECOMMENDATIONS

For the reasons identified above, the court should deny petitioner's alternative request for an evidentiary hearing, deny the Amended Petition for Writ of Habeas Corpus (docket #24), and enter a judgment dismissing this case with prejudice. The court should decline to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

## SCHEDULING ORDER

The Findings and Recommendations will be referred to a district judge. Objections, if any, are due February 25, 2016. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

DATED this 8th day of February, 2016.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

20 – FINDINGS AND RECOMMENDATIONS